**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED

July 08, 2025

LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

| | |
|---|---|
| CHARLOTTE MANNING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ELI LILLY AND COMPANY and | ) |
| LILLY USA, LLC, | ) |
| | ) |
| Defendants. | ) |

Civil Action No. 7:25cv00448

**JURY TRIAL DEMANDED**

## COMPLAINT

## NATURE OF THE CASE

1.        This case is one of many filed against Defendants Eli Lilly and Company and Lilly USA, LLC arising from a class of drugs called GLP-1 receptor agonists. Such cases have been consolidated in the Eastern District of Pennsylvania under IN RE GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAS) PRODUCTS LIABILITY LITIGATION, MDL No. 3094. Plaintiff incorporates by reference the factual allegations in the Master Complaint in MDL No. 3094, as amended, as if fully stated herein. *See* MDL No. 3094, ECF No. 294.

2.        This is an action for damages suffered by the Plaintiff, Charlotte Manning, who was severely injured as a result of Plaintiff's use of Mounjaro, an injectable prescription medication that is used to control blood sugar in adults with type 2 diabetes and promote weight loss.

3.        Mounjaro is also known as tirzepatide. Mounjaro works by targeting the body's receptors for GIP (glucose-dependent insulinotropic polypeptide) and GLP-1 (glucagon-like peptide-1).

4.      Mounjaro belongs to a class of drugs called GLP-1 receptor agonists ("GLP-1RAs").

5.      Defendants have acknowledged that gastrointestinal events are well known side effects of the GLP-1RAs class of drugs. However, Defendants have downplayed the severity of the gastrointestinal events caused by Mounjaro, never, for example, warning of the risk of gastroparesis ("paralyzed stomach") and its sequalae including reoccurring vomiting and associated complications that go beyond the warnings contemplated on the label.[1]

6.      Gastroparesis is a condition that affects normal muscle movement in the stomach. Ordinarily, strong muscular contractions propel food through the digestive tract. However, in a person suffering from gastroparesis, the stomach's motility is slowed down or does not work at all, preventing the stomach from emptying properly. Gastroparesis can interfere with normal digestion and cause nausea, vomiting (including vomiting of undigested food), abdominal pain, abdominal bloating, severe dehydration, a feeling of fullness after eating just a few bites, undigested food hardening and remaining in the stomach, acid reflux, changes in blood sugar levels, lack of appetite, weight loss, malnutrition, a decreased quality of life, and death. There is no cure for gastroparesis.

## **PARTY PLAINTIFF**

7.      Plaintiff Charlotte Manning ("Plaintiff") is a citizen of the United States, and is a resident of the Commonwealth of Virginia.

8.      Plaintiff is 76 years old.

9.      Plaintiff has type-2 diabetes, for which has been prescribed various

---

[1]      Mounjaro's label mentions gastroparesis without warning of the risk; rather, it states that Mounjaro "has not been studied" in patients with gastroparesis or other severe gastrointestinal disease, "and is therefore not recommended in these patients[,]" and it lists gastroparesis among other medical conditions for patients to discuss with their healthcare providers.

medications, including Mounjaro.

10.    Plaintiff used Mounjaro from late 2022 or early 2023 to March 2024.

11.    Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Mounjaro that was used by Plaintiff.

12.    Approximately two months after being put on Mounjaro, Plaintiff began experiencing persistent right upper quadrant and right flank symptoms, that is, abdominal pain, as well as other gastric symptoms.

13.    In February 2024, Plaintiff's doctor noted Plaintiff's abdominal pain, slowed bowel motility, and hepatic flexure trapping (a condition where gas or stool becomes trapped in the hepatic flexure of the colon), and stated that her gastric symptoms were very consistent with a GLP-1 effect.

14.    In March 2024, Plaintiff stopped using Mounjaro, but saw no improvement in these gastric symptoms, including reflux.

15.    In May 2024, Plaintiff had an upper endoscopy to evaluate her gastric symptoms, which showed mild gastritis and some focal intestinal metaplasia.

16.    Because Plaintiff had a history of gallbladder removal (due to acalculous disease) and her pain was reminiscent of old gallbladder pain, she was examined using Magnetic Resonance Cholangiopancreatography, which was negative, ruling out a connection to gallbladder removal.

17.    In July 2024, Plaintiff was examined using Gastric Emptying Scintigraphy, which was positive. Accordingly, Plaintiff was diagnosed with gastroparesis (described above) and placed on an appropriate diet.

18.    As a result of using Mounjaro, Plaintiff was caused to suffer from

gastrointestinal injuries sustained, including gastric symptoms described above and gastroparesis, severe personal injuries, pain, suffering, and emotional distress, and incurred medical expenses.

## PARTY DEFENDANTS

19.    Defendant Eli Lilly and Company is and at all relevant times has been an Indiana corporation with a principal place of business at 893 S. Delaware St., Indianapolis, Indiana. Upon information and belief, Defendant Eli Lilly and Company is a citizen of Indiana

20.    Defendant Lilly USA, LLC is and at all relevant times has been an Indiana LLC with a principal place of business at 893 S. Delaware St., Indianapolis, Indiana. Upon information and belief, Defendant Lilly USA, LLC is a citizen of Indiana.

21.    Defendants Eli Lilly and Company and Lilly USA, LLC are referred to collectively herein as "the Eli Lilly Defendants" or "Eli Lilly" or "Lilly."

22.    Each of the Eli Lilly Defendants was the agent and employee of the other Eli Lilly Defendants and, in doing the things alleged, was acting within the course and scope of such agency and employment and with the other Eli Lilly Defendants' actual and implied permission, consent, authorization and approval.

23.    In collaboration amongst themselves, as part of their business, and at all relevant times, the Eli Lilly Defendants designed, researched, manufactured, tested, labeled, advertised, promoted, marketed, sold, and/or distributed GLP-1 RAs, including Mounjaro.

## JURISDICTION AND VENUE

24.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because the amount in controversy alleged exceeds the sum or value of $75,000.00,

exclusive of interest and costs, and complete diversity of citizenship exists between Plaintiff and each Defendant.

25.    Defendants have significant contacts with Virginia, such that they are subject to the personal jurisdiction of the Court, and Defendants have significant contacts with Pennsylvania, such that they are subject to the personal jurisdiction of the MDL district, the Eastern District of Pennsylvania.

26.    Defendants are each and at all relevant times have been multinational Fortune 500 companies that have significant contacts in each of the States and Territories of the United States, such that personal jurisdiction would be proper in any of them. Defendants have expected or should have expected their acts to have consequence within each of the States and Territories of the United States, and Defendants have derived substantial revenue from the sale of Mounjaro in each of the States and Territories of the United States.

27.    Pursuant to 28 U.S.C. § 1391(a), venue is proper in the Western District of Virginia because substantial part of the events and omissions giving rise to Plaintiff's causes of action occurred in there; and venue is also proper in the Eastern District of Pennsylvania on account of the MDL designation pursuant to 28 U.S.C. § 1407.

## FACTUAL BACKGROUND

### A.    FDA's Approval of Mounjaro

28.    On September 14, 2021, Eli Lilly submitted NDA 215866 Mounjaro (tirzepatide) injection as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus. On May 13, 2022, the FDA approved NDA 215866.

29.    On May 13, 2022, Eli Lilly announced the FDA's approval of NDA 215866

Mounjaro (tirzepatide) injection as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes. In the press release, Eli Lilly disclosed a safety summary and provided a link to the Medication Guide and Prescribing Information, but gastroparesis and its sequela like reoccurring vomiting were not identified as a risk.

**B.      Eli Lilly's Marketing and Promotion of Mounjaro**

30.     On May 13, 2022, Eli Lilly announced approval of Mounjaro, proclaiming "Mounjaro's safety … in a broad range of adults with type 2 diabetes."[2]

31.     At all relevant times, Eli Lilly was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and/or distribute Mounjaro.

32.     On October 6, 2022, Eli Lilly announced that the FDA had "granted Fast Track designation for the investigation of tirzepatide" to treat obese or overweight adults.[3]

33.     According to a recent publication, in fall 2022, analysts at UBS projected that Mounjaro could reach peak sales of $25 billion, asserting Eli Lilly's position in the multibillion dollar obesity market.[4]

34.     In March 2023, it was reported that Eli Lilly kicked off a full-scale consumer campaign for Mounjaro after launching a digital campaign in January, including a 75-second TV spot supporting Mounjaro aired on FOX on February 12, the same day as

---

[2]      *FDA approves Lilly's Mounjaro™ (tirzepatide) injection, the first and only GIP and GLP-1 receptor agonist for the treatment of adults with type 2 diabetes, Cision PR Newswire* (May 13, 2022), https://www.prnewswire.com/ news-releases/fda-approves-lillys-mounjaro-tirzepatide-injection-the-first-and-only-gip-and-glp-1-receptor-agonist-for-the-treatment-of-adults-with-type-2-diabetes-301547339.html

[3]      *Lilly Receives U.S. FDA Fast Track designation for tirzepatide for the treatment of adults with obesity, or overweight with weight-related comorbidities* (October 6, 2022) available at https://investor.lilly.com/news-releases/news-release-details/lilly-receives-us-fda-fast-track-designation-tirzepatide.

[4]      Munger L, BioSpace, *Eli Lilly and Novo Nordisk Face Off in Lucrative Obesity Market* (May 30, 2023) available at https://www.biospace.com/article/eli-lilly-and-novo-nordisk-face-off-in-lucrative-obesity-market.

Super Bowl LVII.[5]

35.    On April 11, 2023, the New York Times reported that Mounjaro was "gaining attention, with many people using it off-label to lose weight." The article described research which "found that Mounjaro may be even more powerful" than Ozempic, which it reported had recently "steamrollered through TikTok, talk shows and tabloids as people raved about using it off-label to lose weight." Although Eli Lilly denied promoting or encouraging "the off-label use of any of our medicines[,]" it was obvious to Eli Lilly and others in the industry that Mounjaro was following Ozempic's rising popularity for its weight loss effects. Furthermore, the same article also noted Eli Lilly's October announcement regarding the FDA's fast-track designation for its review of tirzepatide.[6]

**C.    The Medical Literature and Clinical Trials Gave Defendants Notice of Gastroparesis**
    **and its Sequelae Being Causally Associated with GLP-1RAs.**

36.    As previously noted, Mounjaro (tirzepatide) belongs to a class of drugs called GLP-

1RAs.

37.    Medications within the GLP-1RA class of drugs mimic the physiological activities of GLP-1, which is a gut hormone that activates the GLP-1 receptor in the pancreas to stimulate the release of insulin and suppress glucagon.

38.    Because the risk of gastroparesis and its sequelae like reoccurring vomiting is common to the entire class of drugs, any published literature regarding the association between gastroparesis and its sequelae like reoccurring vomiting and any GLP-1RA (such

---

[5]    O'Brien J, Medical Marketing and Media, *Eli Lilly kicks off consumer campaign for diabetes drug Mounjaro* (March 9, 2023) available at https://www.mmm-online.com/home/channel/campaigns/eli-lilly-kicks-off-consumer-campaign- for-diabetes-drug-mounjaro/.
[6]    Blum D, *The Diabetes Drug That Could Overshadow Ozempic,* The New York Times (published April 11, 2023, updated June 24, 2023) available at https://www.nytimes.com/2023/04/11/well/live/ozempic-mounjaro-weight-loss- diabetes.html.

as exenatide, liraglutide, albiglutide, dulaglutide, lixisenatide, and semaglutide) should have put Defendants on notice of the need to warn patients and prescribing physicians of the risk of gastroparesis and its sequelae like reoccurring vomiting associated with this class of drugs.

39.    In addition to pancreatic effects, the published medical literature shows that GLP- 1RAs slow gastric emptying. As early as 2010, a study published in The Journal of Clinical Endocrinology & Metabolism indicated this effect.[7]

40.    Defendants knew or should have known of this risk of gastroparesis and its sequelae like reoccurring vomiting from the clinical trials, medical literature, and case reports.

41.    A 2016 trial funded by Novo Nordisk measuring semaglutide and cardiovascularoutcomes in patients with type 2 diabetes found more gastrointestinal disorders in the semaglutide group than in the placebo group, including a severe adverse event report of impaired gastric emptying with semaglutide 0.5 mg together with other serious gastrointestinal adverse events such as abdominal pain (upper and lower), intestinal obstruction, change of bowel habits, vomiting, and diarrhea.[8]

42.    Two subjects in a semaglutide trial pool by Novo Nordisk reported moderate adverse events of impaired gastric emptying and both subjects permanently discontinued treatment due to the adverse events. Three subjects also reported mild adverse

---

[7]    Deane AM et al., *Endogenous Glucagon-Like Peptide-1 Slows Gastric Emptying in Healthy Subjects, Attenuating Postprandial Glycemia*, 95(1) J Clinical Endo Metabolism, 225-221 (January 1, 2010), https://academic.oup.com/jcem/article/95/1/215/2835243 ; American Society of Anesthesiologists, *Patients Taking Popular Medications for Diabetes and Weight Loss Should Stop Before Elective Surgery, ASA Suggests* (June 28, 2023), https://www.asahq.org/about-asa/newsroom/news- releases/2023/06/patients-taking-popular-medications-for-diabetes-and-weight-loss-should-stop-before-elective- surgery.

[8]    Marso SP et al., Semaglutide and Cardiovascular Outcomes in Patients with Type 2 Diabetes, N. Eng. J. Med. 375:1834-1844 (November 10, 2016), https://www.nejm.org/doi/10.1056/NEJMoa1607141.

events of impaired gastric emptying in the semaglutide run-in period of trial 4376. The cardiovascular outcomes trials included two cases of gastroparesis with the first subject being diagnosed with severe gastroparesis after one month in the trial and second subject being diagnosed with gastroparesis after approximately two months in the trial.

43.    A study published in 2017 evaluated the effect of GLP-1RAs on gastrointestinal tract motility and residue rates and explained that "GLP-1 suppresses gastric emptying by inhibiting peristalsis of the stomach while increasing tonic contraction of the pyloric region." The study authors concluded that the GLP-1RA drug liraglutide "exhibited gastric-emptying delaying effects" and "the drug also inhibited duodenal and small bowel movements at the same time."[9]

44.    Another study in 2017 reviewed the survey results from 10,987 patients and 851 physicians and found that "GI-related issues were the top two patient-reported reasons for GLP-1 RA discontinuation in the past 6 months, with 'Made me feel sick' as the most frequently reported reason (64.4%), followed by 'Made me throw up' (45.4%)."[10] As explained above, these are symptoms of gastroparesis and its sequelae like reoccurring vomiting go beyond the warnings contemplated by the drug's labeling.

45.    A 2019 study of the GLP-1RA drug dulaglutide identified adverse events for impaired gastric emptying and diabetic gastroparesis.

46.    In August of 2020, medical literature advised that some "patients do not know they have diabetic gastroparesis until they are put on a glucagon-like peptide 1 (GLP-

---

[9]    Nakatani Y et al., *Effect of GLP-1 receptor agonist on gastrointestinal tract motility and residue rates as evaluated by capsule endoscopy*, 43(5) Diabetes & Metabolism, 430-37 (October 2017), https://www.sciencedirect.com/science/article/pii/S1262363617301076.

[10]    Sikirica M et al., *Reasons for discontinuation of GLP1 receptor agonists: data from a real-world cross-sectional survey of physicians and their patients with type 2 diabetes*, 10 Diabetes Metab. Syndr. Obes., 403-412 (September 29, 2017), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5630073/.

1) receptor agonist such as liraglutide, dulaglutide, semaglutide, lixisenatide, or exenatide to manage their blood glucose." The article went on to explain that "[t]his class of drugs can exacerbate the symptoms of diabetic gastroparesis. ... Thus, GLP-1 receptor agonist therapy is not recommended for people who experience symptoms of gastroparesis."[11]

47.    In a September 2020 scientific article funded and reviewed by Novo Nordisk, scientists affiliated with Novo Nordisk reported on two global clinical trials that evaluated the effect of semaglutide in patients with cardiovascular events and diabetes. More patients permanently discontinued taking oral semaglutide (11.6%) than placebo (6.5%) due to adverse events. The most common adverse events associated with semaglutide were nausea (2.9% with semaglutide versus 0.5% with placebo), vomiting (1.5% with semaglutide versus 0.3% with placebo), and diarrhea (1.4% with semaglutide versus 0.4% with placebo). Injectable semaglutide had a discontinuation rate of 11.5-14.5% (versus 5.7-7.6% with placebo) over a 2.1 year period. The authors acknowledged the potential for severe gastrointestinal events, warning that "[f]or patients reporting severe adverse gastrointestinal reactions, it is advised to monitor renal function when initiating or escalating doses of oral semaglutide." For patients with other comorbidities, the study warned that "patients should be made aware of the occurrence of gastrointestinal adverse events with GLP-1RAs." The study further identified as one "key clinical take-home point" that "patients should be made aware of the occurrence of gastrointestinal adverse events with GLP- 1RAs."[12]

48.    A July 2021 scientific article funded and reviewed by Novo Nordisk

---

[11]    Young CF, Moussa M, Shubrook JH, Diabetic Gastroparesis: A Review, Diabetes Spectr. (2020), Aug; 33(3): 290– 297, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7428659/.

[12]    Mosenzon O, Miller EM, & Warren ML, *Oral semaglutide in patients with type 2 diabetes and cardiovascular disease, renal impairment, or other comorbidities, and in older patients*, Postgraduate Medicine (2020), 132(S2): 37- 47, https://doi.org/10.1080/00325481.2020.1800286.

considered 23 randomized control trials conducted across the United States, Japan, and China and concluded that "gastrointestinal disturbances" were "well-known" side effects associated with semaglutide use. When compared with placebos, the subcutaneous (injection) form of the drug induced nausea in up to 20% of patients (versus up to 8% on the placebo group), vomiting in up to 11.5% of patients (versus up to 3% in the placebo group) and diarrhea in up to 11.3% of patients (versus up to 6% in the placebo group). Overall, the percentage of patients experiencing adverse events that led to trial product discontinuation was greatest for gastrointestinal related adverse events accounting for 58.75% of the patients with adverse events leading to trial product discontinuation. Semaglutide appeared to be associated with more frequent vomiting and nausea as compared to the other GLP-1Ras that were studied. The study acknowledges that while nausea and vomiting are unwanted side effects, "they may be partly responsible for aspects of the drug's efficacy[.]"[13]

49.     An October 2021 scientific article in the Journal of Investigative Medicine ("JIM") concluded that because gastroparesis can be associated with several medications, "[i]t is crucial to identify the causative drugs as discontinuation of the drug can result in resolution of the symptoms[.]" In diabetics, making this determination can be particularly "tricky" because both diabetes and GLP-1RAs can cause delayed gastric emptying. As such, "the timeline of drug initiation and symptom onset becomes of the upmost importance." The authors reviewed two case reports (discussed below) and concluded that history taking and making an accurate diagnosis of diabetic gastroparesis versus medication-induced gastroparesis is

---

[13]     Smits MM & Van Raalte DH (2021), *Safety of Semaglutide*, Front. Endocrinol., 07 July 2021, doi: 10.3389/fendo.2021.645563, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8294388/.

critical.[14]

50.    Case Report #1 in JIM involved a 52-year-old female with long-standing history (10 years) of well-controlled, type 2 diabetes who had been taking weekly semaglutide injections approximately one month prior to the onset of gastroparesis symptoms. The patient had a 7-month history of post-prandial epigastric pain, accompanied by fullness, bloating, and nausea. A gastric emptying study showed a 24% retention of isotope in the patient's stomach at four hours, indicative of delayed gastric emptying. The patient discontinued semaglutide and her symptoms resolved after six weeks. The case report authors concluded that "thorough history taking revealed the cause [of gastroparesis] to be medication induced."[15]

51.    Case Report #2 in JIM involved a 57-year-old female with a long-standing history (16 years) of type 2 diabetes who had been taking weekly dulaglutide injections (another GLP- 1RA) for 15 months and suffering from abdominal bloating, nausea, and vomiting for 12 of those months. A gastric emptying study showed 35% retention of isotope in the patient's stomach at four hours, indicating delayed gastric emptying. After discontinuing dulaglutide, the patient experienced a gradual resolution of symptoms over a four-week period.[16]

52.    A June 2022 study reported GLP-1RA tirzepatide adverse events of vomiting and nausea, with gastrointestinal events being the most common adverse event.[17]

53.    An October 2022 study analyzed 5,442 GLP-1RA gastrointestinal adverse events.

---

[14]    Kalas MA, Galura GM, McCallum RW, *Medication-Induced Gastroparesis: A Case Report*, J Investig Med High Impact Case Rep. 2021 Jan-Dec; 9: 23247096211051919, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8529310/.

[15]    *Id.*

[16]    *Id.*

[17]    Jastreboff, *Tirzepatide Once Weekly for the Treatment of Obesity*, N Engl J Med, at 214 (June 4, 2022) (https://doi.org/10.1056/nejmoa2206038).

32% were serious, including 40 deaths, 53 life-threatening conditions, and 772 hospitalizations. The primary events were nausea and vomiting. There were also adverse events for impaired gastric emptying.[18]

54.    A January 2023 meta-analysis of GLP-1RA tirzepatide adverse events reported high rates of nausea and vomiting.[19]

55.    In February 2023, a longitudinal study of GLP-1RA dulaglutide reported adverse events for nausea and vomiting, and one adverse event of impaired gastric emptying.[20]

56.    On March 28, 2023, a case study concluded that impaired gastric emptying is "a significant safety concern, especially since it is consistent with the known mechanism of action of the drug."[21]

57.    On June 29, 2023, the American Society of Anesthesiologists ("ASA") warned that patients taking semaglutide and other GLP-1RAs should stop the medication at least a week before elective surgery because these medications "delay gastric (stomach) emptying" and "the delay in stomach emptying could be associated with an increased risk of regurgitation and aspiration of food into the airways and lungs during general anesthesia and deep sedation." The ASA also warned that the risk is higher where patients on these medications have experienced nausea and vomiting.[22]

---

[18]    Shu Y et al., *Gastrointestinal adverse events associated with semaglutide: A pharmacovigilance study based on FDA adverse event reporting system*, Front. Public Health (Oct. 19, 2022), https://doi.org/10.3389%2Ffpubh.2022.996179.
[19]    Mishra R et al., *Adverse Events Related to Tirzepatide*, J. of Endocrine Society (Jan. 26, 2023), https://doi.org/10.1210%2Fjendso%2Fbvad016.
[20]    Chin R et al., *Safety and effectiveness of dulaglutide 0.75 mg in Japanese patients with type 2 diabetes in real-world clinical practice: 36 month post-marketing observational study*, J Diabetes Investig (Feb. 2023), https://doi.org/10.1111%2Fjdi.13932.
[21]    Klein SR et al., *Semaglutide, delayed gastric emptying, and intraoperative pulmonary aspiration: a case report*, Can J. Anesth (Mar. 28, 2023), https://doi.org/10.1007/s12630-023-02440-3.
[22]    *American Society of Anesthesiologists, Patients Taking Popular Medications for Diabetes and Weight Loss Should Stop Before Elective Surgery, ASA Suggests* (June 28, 2023), https://www.asahq.org/about-asa/

58.    News sources have identified the potential for serious side effects in users of Ozempic, including gastroparesis and its sequelae like reoccurring vomiting and delayed emptying lasting a year, leading to hospitalization[23] For example, NBC News reported in January 2023 that some Ozempic users were discontinuing use because their symptoms were unbearable, and one user said that five weeks into taking the medication she found herself unable to move off the bathroom floor because she had "vomited so much that [she] didn't have the energy to get up."[24] CNN reported in July that one Ozempic user diagnosed with gastroparesis vomits so frequently that she had to take a leave of absence from her teaching job.[25]

59.    A July 25, 2023, article in Rolling Stone magazine - "Ozempic Users Report Stomach Paralysis from Weight Loss Drug: 'So Much Hell'" - highlighted three patients who suffered severe gastrointestinal related events, including gastroparesis, as a result of their use of GLP-1RAs. Patient 1 (female, age 37) reported incidents of vomiting multiple times per day and being unable to eat. The patient's physician diagnosed her with severe gastroparesis and concluded that her problems were caused and/or exacerbated by her use of a GLP-1RA medication. Patient 2 (female) used Ozempic for one year and reported incidents of vomiting, including multiple times per day. The patient's physician diagnosed

newsroom/news-releases/2023/06/patients-taking-popular-medications-for-diabetes-and-weight-loss-should-stop-before-elective-surgery.

[23]    Min P, *Ozempic May Cause Potential Hospitalizations*, healthnews (June 26, 2023), https://healthnews.com/news/ozempic-may-cause-potential-hospitalizations/ ; Nelson EL, *These Are the 5 Most Common Ozempic Side Effects, According to Doctors*, Best Life (April 3, 2023), https://bestlifeonline.com/ozempic-side-effects-news/; Shultz C, *Ozempic and Wegovy May Cause Stomach Paralysis in Some Patients*, People (July 26, 2023), https://people.com/ozempic- wegovy-weight-loss-stomach-paralysis-7565833; CBS News Philadelphia, *Popular weight loss drugs Ozempic and Wegovy may cause stomach paralysis, doctors warn* (July 25, 2023), https://www.cbsnews.com/philadelphia/news/weight-loss-drugs-wegovy-ozempic-stomach- paralysis/.

[24]    Bendix A, Lovelace B Jr., *What it's like to take the blockbuster drugs Ozempic and Wegovy, from severe side effects to losing 50 pounds*, NBC News (Jan. 29, 2023), https://www.nbcnews.com/health/healthnews/ozempic-wegovy-diabetes-weight-loss-side-effects-rcna66493.

[25]    Goodman B, *They took blockbuster drugs for weight loss and diabetes. Now their stomachs are paralyzed*, CNN (July 25, 2023), https://www.cnn.com/2023/07/25/health/weight-loss-diabetes-drugs- gastroparesis/index.html.

her with severe gastroparesis related to her Ozempic use. Patient 3 (female, age 42) experienced severe nausea both during and after she discontinued use of a GLP-1RA. In a statement to Rolling Stone, Novo Nordisk acknowledged that "[t]he most common adverse reactions, as with all GLP-1 RAs, are gastrointestinal related." Novo Nordisk further stated that while "GLP-1 RAs are known to cause a delay in gastric emptying, … [s]ymptoms of delayed gastric emptying, nausea and vomiting are listed as side effects." Novo Nordisk did not claim to have warned consumers about gastroparesis, or other severe gastrointestinal issues.[26]

60.       On July 25, 2023, CNN Health reported that patients taking Ozempic have been diagnosed "with severe gastroparesis, or stomach paralysis, which their doctors think may have resulted from or been exacerbated by the medication they were taking, Ozempic." Another patient taking Wegovy (semaglutide) suffered ongoing nausea and vomiting, which was not diagnosed, but which needed to be managed with Zofran and prescription probiotics.[27]

61.       On July 26, 2023, a New York hospital published an article to its online health blog section "What You Need to Know About Gastroparesis" entitled "Delayed Stomach Emptying Can Be Result of Diabetes or New Weight-Loss Medicines." It was reported that a growing number of gastroparesis cases had been seen in people taking GLP-1RAs. The article noted that the weight loss drugs can delay or decrease the contraction of muscles that mix and propel contents in the gastrointestinal tract leading to delayed gastric emptying. One concern raised was that patients and doctors often assume the symptoms of gastroparesis are reflux or

---

[26]       Jones CT, *Ozempic Users Report Stomach Paralysis from Weight Loss Drug: 'So Much Hell'*, Rolling Stone (July 25, 2023), https://www.rollingstone.com/culture/culture-news/ozempic-stomach-paralysis-weight-loss-side-effects-1234794601.

[27]       Goodman B, *They took blockbuster drugs for weight loss and diabetes. Now their stomachs are paralyzed,* CNN Health (July 25, 2023), https://www.cnn.com/2023/07/25/health/weight-loss-diabetes-drugs-gastroparesis.

other gastrointestinal conditions, meaning it may take a long time for someone to be diagnosed correctly.[28]

62.    In an October 5, 2023, Research Letter published in the Journal of the American Medical Association ("JAMA"), the authors examined gastrointestinal adverse events associated with GLP-1RAs used for weight loss in clinical setting and reported that use of GLP-1RAs compared with use of bupropion-naltrexone was associated with increased risk of pancreatitis, gastroparesis, and bowel obstruction. The study found that patients prescribed GLP-1RAs were at 4.22 times higher risk of bowel obstruction and at 3.67 times higher risk of gastroparesis.[29]

63.    The medical literature listed above is not a comprehensive list, and several other case reports have indicated that GLP-1RAs can cause gastroparesis, impaired gastric emptying and its sequalae including reoccurring vomiting.

64.    Defendants knew or should have known of the causal association between the use of GLP-1RAs and the risk of developing gastroparesis and its sequelae like reoccurring vomiting, but they ignored the causal association. Defendants' actual and constructive knowledge derived from their clinical studies, case reports, medical literature, including the medical literature and case reports referenced above in this Complaint.

65.    Upon information and belief, Defendants not only knew or should have known that its GLP-1RAs cause delayed gastric emptying, resulting in risks of gastroparesis, but they may have sought out the delayed gastric emptying effect due to its association with weight loss. For example, a recent study published in 2023 notes that "it has been previously proposed that

---

[28]    *Delayed Stomach Emptying Can Be Result of Diabetes or New Weight-Loss Medicines*, Montefiore Health Blog article (released July 26, 2023), https://www.montefiorenyack.org/health-blog/what-you-need-know- about-gastroparesis.
[29]    Sodhi M et al., *Risk of Gastrointestinal Adverse Events Associated with Glucagon-Like Peptide-1 Receptor Agonists for Weight Loss*, JAMA (published online October 5, 2023), https://jamanetwork.com/journals/jama/fullarticle/2810542.

longacting GLP- 1RAs could hypothetically contribute to reduced energy intake and weight loss by delaying GE [gastric emptying,]" and the study authors suggested "further exploration of peripheral mechanisms through which s.c. semaglutide, particularly at a dose of 2.4. mg/week, could potentially contribute to reduced food and energy intake."[30]

### D.    Defendants Failed to Warn of the Risk of Gastroparesis from Mounjaro

66.    The Prescribing Information for Mounjaro discloses "Warnings and Precautions" and "Adverse Reactions" but does not adequately warn of the risk of gastroparesis and its sequelae like reoccurring vomiting and delayed emptying lasting a year.[37]

67.    The Mounjaro label lists nausea, diarrhea, decreased appetite, vomiting, constipation, dyspepsia, and abdominal pain as common adverse reactions, but it does not indicate a severity of symptoms. Even though the label warns about the risk of severe gastrointestinal disease, gastroparesis is not specifically mentioned.

68.    None of Defendants' additional advertising or promotional materials warned prescription providers or the general public of the risks of gastroparesis and its sequelae like reoccurring vomiting.

69.    Defendants knew or should have known of the causal association between the use of GLP-1RAs and the risk of developing gastroparesis and its sequelae like reoccurring vomiting that go beyond the warnings contemplated by the drug's label. Defendants' actual and constructive knowledge derived from its clinical studies, case reports, and the medical literature, including the medical literature and case reports referenced in this Complaint.

---

[30]    Jensterle M et al., *Semaglutide delays 4-hour gastric emptying in women with polycystic ovary syndrome and obesity*, 25(4)    Diabetes    Obes.    Metab.    975-984    (April    2023), https://dompubs.onlinelibrary.wiley.com/doi/epdf/10.1111/dom.14944.
[37]    *Mounjaro prescribing information*, https://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=d2d7da5d-ad07-4228-955f-cf7e355c8cc0.

70.     Upon information and belief, Defendants ignored the causal association between the use of GLP-1RAs and the risk of developing gastroparesis and its sequelae like reoccurring vomiting that go beyond the warnings contemplated by the drug's labeling.

71.     Defendants' failure to disclose information that it possessed regarding the causal association between the use of GLP-1RAs and the risk of developing gastroparesis and its sequelae like reoccurring vomiting, rendered the warnings for Mounjaro inadequate.

72.     Upon information and belief, as a result of Defendants' inadequate warnings, the medical community at large, and Plaintiff's prescribing physician in particular, were not aware that Mounjaro can cause gastroparesis and its sequelae like reoccurring vomiting that go beyond the warnings contemplated by the drug's labeling, nor were they aware that "common adverse reactions" listed on the label might be sequelae of these problems.

73.     Upon information and belief, had Defendants adequately warned Plaintiff's prescribing physician that Mounjaro is causally associated with gastrointestinal injuries and its sequelae, then the physician's prescribing decision would have changed by not prescribing Mounjaro, or by monitoring Plaintiff's health for symptoms of gastroparesis and its sequelae like reoccurring vomiting that go beyond the warnings contemplated by the drug's labeling and discontinuing Mounjaro when the symptoms first started.

74.     By reason of the foregoing acts and omissions, Plaintiff was and still is caused to suffer from reoccurring vomiting, which resulted in severe personal injuries, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

## CAUSES OF ACTION

## COUNT ONE - INADEQUATE WARNING

75.     Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

76.     Virginia law imposes a duty on producers, manufacturers, distributors, lessors, and sellers of a product to exercise all reasonable care when producing, manufacturing, distributing, leasing, and selling their products.

77.     At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Mounjaro that was used by Plaintiff.

78.     Mounjaro was expected to and did reach the usual consumers, handlers, and persons coming into contact with said products without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendant.

79.     At all relevant times, and at the times Mounjaro left Defendants' control, Defendants knew or should have known that Mounjaro was unreasonably dangerous because they did not adequately warn of the risk of gastroparesis and its sequelae like reoccurring vomiting that go beyond the warnings contemplated by the drug's labeling, especially when used in the form and manner as provided by Defendant.

80.     Despite the fact that Defendants knew or should have known that Mounjaro caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Mounjaro to consumers, including Plaintiff, without adequate warnings.

81.     Despite the fact that Defendants knew or should have known that Mounjaro caused unreasonably dangerous injuries, Defendants continued to market Mounjaro to prescribing physicians, including Plaintiff's prescribing physician(s), without adequate warnings.

82.    Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

83.    At all relevant times, given its increased safety risks, Mounjaro was not fit for the ordinary purpose for which it was intended.

84.    At all relevant times, given its increased safety risks, Mounjaro did not meet the reasonable expectations of an ordinary consumer, particularly Plaintiff.

85.    Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or distribution of Mounjaro into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries, such as reoccurring vomiting that goes beyond the warnings contemplated by the drug's labeling.

86.    At all relevant times, Plaintiff was using Mounjaro for the purposes and in a manner normally intended—namely, weight loss.

87.    The Mounjaro designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that the product created a risk of serious and dangerous injuries, gastroparesis and its sequelae like reoccurring vomiting that go beyond the warnings contemplated by the drug's labeling, as well as other severe and personal injuries, and Defendants failed to adequately warn of said risk.

88.    The Mounjaro designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, including gastroparesis and its sequelae like reoccurring vomiting that go beyond the warnings contemplated by the drug's labeling, as well as other severe and

permanent health consequences from Mounjaro, they failed to provide adequate warnings to users and/or prescribers of the product, and continued to improperly advertise, market and/or promote their product, Mounjaro.

89.     The label for Mounjaro was inadequate because it did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Mounjaro, including the increased risk of gastroparesis and its sequelae like reoccurring vomiting and delayed emptying lasting a year that go beyond the warnings contemplated by the drug's labeling.

90.     The label for Mounjaro was inadequate because it did not warn and/or adequately warn that Mounjaro had not been sufficiently and/or adequately tested for safety risks, including gastroparesis and its sequelae like reoccurring vomiting and delayed emptying lasting a year that go beyond the warnings contemplated by the drug's labeling.

91.     The label for Mounjaro was inadequate because it did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Mounjaro.

92.     The label for Mounjaro was inadequate because it did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

93.     Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) were inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Mounjaro, including the increased risk of gastroparesis and its sequelae like reoccurring vomiting that go beyond the warnings contemplated by the drug's labeling.

94.     Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) were inadequate because Defendants failed to warn and/or adequately warn that

Mounjaro had not been sufficiently and/or adequately tested for safety risks, gastroparesis and its sequelae like reoccurring vomiting that go beyond the warnings contemplated by the drug's labeling.

95.     Plaintiff had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and Plaintiff's reliance upon Defendants' warnings was reasonable.

96.     Plaintiff's prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and their reliance upon Defendants' warnings was reasonable.

97.     Upon information and belief, had Plaintiff's prescribing physician(s) been warned of the increased risks of gastroparesis and its sequelae like reoccurring vomiting, which are causally associated with Mounjaro, then the prescribing physician would not have prescribed Mounjaro

and/or would have provided Plaintiff with adequate warnings regarding the dangers of Mounjaro so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Mounjaro.

98.     Upon information and belief, had Plaintiff's prescribing physician(s) been warned that Mounjaro had not been sufficiently and/or adequately tested for safety risks, including gastric symptoms described above and gastroparesis and its sequelae like reoccurring vomiting, the prescribing physician would not have prescribed Mounjaro and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Mounjaro so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Mounjaro.

99.     If Plaintiff had been warned of the increased risks of gastroparesis and its sequelae like reoccurring vomiting, which are causally associated with Mounjaro, then Plaintiff

would not have used Mounjaro and/or suffered from reoccurring vomiting and other gastrointestinal issues.

100.    If Plaintiff had been warned that Mounjaro had not been sufficiently and/or adequately tested for safety risks, including gastric symptoms described above and gastroparesis and its sequelae like reoccurring vomiting, then Plaintiff would not have used Mounjaro and/or suffered from reoccurring vomiting and other gastrointestinal issues.

101.    If Plaintiff had been warned of the increased risks of gastroparesis and its sequelae like reoccurring vomiting, which is causally associated with Mounjaro, then Plaintiff would have informed Plaintiff's prescribers that Plaintiff did not want to take Mounjaro.

102.    Upon information and belief, if Plaintiff had informed Plaintiff's prescribing physician(s) that Plaintiff did not want to take Mounjaro due to the risks of gastroparesis and its sequelae like reoccurring vomiting, or the lack of adequate testing for safety risks, then Plaintiff's prescribing physician(s) would not have prescribed Mounjaro.

103.    By reason of the foregoing, Defendants have become liable to Plaintiff for the designing, marketing, promoting, distribution and/or selling of an unreasonably dangerous product, Mounjaro.

104.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which created an unreasonable risk to the health of consumers and to Plaintiff in particular, and Defendants are therefore liable for the injuries sustained by Plaintiff.

105.    Defendants' inadequate warnings for Mounjaro were acts that amount to willful, wanton, and/or reckless conduct by Defendant.

106.    Said inadequate warnings for Defendants' drug Mounjaro was a substantial factor in causing Plaintiff's injuries.

107.     As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, including gastric symptoms described above and gastroparesis, causing, among other things, physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

108.     As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services.

109.     Pleading further and subject to the foregoing and without waiving same, Plaintiff would show that Defendants owed Plaintiff's prescribing physician(s) and/or Plaintiff a duty to adequately warn of the extent and the nature of the risks posed by their medications. Plaintiff would

further show that because Defendants improperly withheld and/or concealed and/or hid information regarding the extent and the nature of the risks posed by their medications from Plaintiff's prescribing physician(s) and/or Plaintiff, Plaintiff was unable to learn about the cause of Plaintiff's injuries until after July 2024, when Plaintiff learned that Mounjaro may cause gastroparesis and its sequelae like reoccurring vomiting that go beyond the warnings contemplated by Mounjaro's label. Accordingly, Defendants fraudulently concealed the existence of Plaintiff's claims.

## COUNT TWO - BREACH OF EXPRESS WARRANTY

110.     Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

111.     At all relevant times, Defendants designed, researched, manufactured, tested,

advertised, promoted, marketed, sold, distributed, and/or has acquired the Defendants who designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Mounjaro, which was used by Plaintiff as hereinabove described.

112.    At all relevant times, Defendants expressly warranted to Plaintiff and Plaintiff's prescribing physician(s) that Mounjaro was safe as a weight loss drug.

113.    The aforementioned express warranties were made to Plaintiff and Plaintiff's prescribing physician(s) by way of Mounjaro's label, website, advertisements, promotional materials, and through other statements.

114.    As a result of Defendants' express warranties, Plaintiff's prescribing physician was induced to prescribe Mounjaro to Plaintiff, and Plaintiff was induced to use Mounjaro.

115.    At all relevant times, Defendants reasonably anticipated and expected that individuals, such as Plaintiff, would use and/or consume Mounjaro based upon their express warranties.

116.    At all relevant times, Defendants reasonably anticipated and expected that prescribing physicians, such as Plaintiff's prescribing physician(s), would recommend, prescribe and/or dispense Mounjaro based upon their express warranties.

117.    At all relevant times, Defendants knew or should have known that Mounjaro was unreasonably dangerous because of its increased risk of gastroparesis and its sequelae like reoccurring vomiting and delayed emptying lasting a year that go beyond the warnings contemplated by Mounjaro's label, especially when the drug was used in the form and manner as provided by Defendant.

118.    At all relevant times, Defendants knew or should have known that Mounjaro had not been sufficiently and/or adequately tested for safety.

119.    The unreasonably dangerous characteristics of Mounjaro were beyond that

which would be contemplated by the ordinary user, such as Plaintiff, with the ordinary knowledge common to the public as to the drug's characteristics.

120.    The unreasonably dangerous characteristics of Mounjaro were beyond that which would be contemplated by Plaintiff's prescribing physician(s), with the ordinary knowledge common to prescribing physician as to the drugs' characteristics.

121.    At the time Mounjaro left Defendants' control, Mounjaro did not conform to Defendants' express warranties because Mounjaro was not safe to use as weight loss aid, in that it was causally associated with increased risks of gastroparesis and its sequelae like reoccurring vomiting and delayed emptying lasting a year that go beyond the warnings contemplated by Mounjaro's label.

122.    The express warranties made by Defendants regarding the safety of Mounjaro were made with the intent to induce Plaintiff to use the product and/or Plaintiff's prescribing physician(s) to prescribe the product.

123.    Defendants knew and/or should have known that by making the express warranties to Plaintiff and/or Plaintiff's prescribing physician(s), it would be the natural tendency of Plaintiff to use Mounjaro and/or the natural tendency of Plaintiff's prescribing physician(s) to prescribe Mounjaro.

124.    Plaintiff and Plaintiff's prescribing physician(s), as well as members of the medical community, relied on the express warranties of Defendants identified herein.

125.    Had Defendants not made these express warranties, Plaintiff would not have used Mounjaro, and, upon information and belief, Plaintiff's prescribing physician(s) would not have prescribed Mounjaro.

126.    Plaintiff's injuries and damages were directly caused by Defendants' breach of

the aforementioned express warranties.

127.    Plaintiff's injuries and damages arose from a reasonably anticipated use of the

products by Plaintiff.

128.    Accordingly, Defendants are liable as a result of their breach of express

warranties to Plaintiff.

129.    As a result of the foregoing breaches, Plaintiff was caused to suffer serious and

dangerous injuries, including gastric symptoms described above and gastroparesis, causing, among

other things, physical pain, mental anguish, diminished enjoyment of life, as well as the need for

lifelong medical treatment, monitoring and/or medications, and fear of developing any of the

above-named health consequences.

130.    By reason of the foregoing, Plaintiff has been severely and permanently injured

and will require more constant and continuous medical monitoring and treatment than prior to

Plaintiff's use of Defendants' Mounjaro drug.

131.    As a result of the foregoing acts and omissions, Plaintiff requires and/or will

require more health care and services and did incur medical, health, incidental, and related

expenses.

132.    Pleading further and subject to the foregoing and without waiving same,

Plaintiff would show that Defendants owed Plaintiff's prescribing physician(s) and/or Plaintiff a

duty to adequately warn of the extent and the nature of the risks posed by their medications. Plaintiff

would further show that because Defendants improperly withheld and/or concealed and/or hid

information regarding the extent and the nature of the risks posed by their medications from

Plaintiff's prescribing physician(s) and/or Plaintiff, Plaintiff was unable to learn about the cause of

Plaintiff's injuries until after July 2024, when Plaintiff learned that Mounjaro may cause

gastroparesis and its sequelae like reoccurring vomiting that go beyond the warnings contemplated

by Mounjaro's label. Accordingly, Defendants fraudulently concealed the existence of Plaintiff's

claims.

## COUNT THREE - BREACH OF IMPLIED WARRANTY
## OFMERCHANTABILITY

133.     Plaintiff repeats, reiterates, and realleges each and every allegation of this

Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect

as if more fully set forth herein.

134.     At all relevant times, Defendants designed, researched, manufactured, tested,

advertised, promoted, marketed, sold, and distributed the Mounjaro drug used by Plaintiff.

135.     Mounjaro was expected to and did reach the usual consumers, handlers, and

persons encountering said product without substantial change in the condition in which it was

produced, manufactured, sold, distributed, and marketed by the Defendant.

136.     At all relevant times, Defendants impliedly warranted to Plaintiff, Plaintiff's

prescribing physician(s), and the medical community that Mounjaro was of merchantable quality

and safe and fit for its ordinary purpose.

137.     At all relevant times, Defendants knew or should have known that Mounjaro

was unreasonably dangerous because of its increased risk of gastroparesis and its sequelae like

reoccurring vomiting and delayed emptying lasting a year that go beyond the warnings

contemplated by Mounjaro's label, especially when the drug was used in the form and manner as

provided by Defendant.

138.     At all relevant times, Defendants knew or should have known that Mounjaro had

not been sufficiently and/or adequately tested for safety.

139.     At the time Mounjaro left Defendants' control, Mounjaro did not confirm to

Defendants' implied warranty and was unfit for its ordinary purpose because Defendants failed to

provide adequate warnings of the drug's causal association with increased risk of gastroparesis and its sequelae like reoccurring vomiting and delayed emptying lasting a year that go beyond the warnings contemplated by Mounjaro's label.

140.     At all relevant times, Defendants reasonably anticipated and expected that prescribing physician(s), such as Plaintiff's prescribing physician(s), would recommend, prescribe and/or dispense Mounjaro for use by their patients to improve glycemic control in adults with type 2 diabetes, reduce cardiovascular risk, and/or to promote weight loss.

141.     At all relevant times, Defendants reasonably anticipated and expected that individuals, such as Plaintiff, would use and/or consume Mounjaro for its ordinary purpose.

142.     Despite the fact that Defendants knew or should have known that Mounjaro causes unreasonably dangerous injuries, such as gastroparesis and its sequelae like reoccurring vomiting and delayed emptying lasting a year that go beyond the warnings contemplated by Mounjaro's label, Defendants continued to market, distribute, and/or sell Mounjaro to consumers, including Plaintiff, without adequate warnings.

143.     The unreasonably dangerous characteristics of Mounjaro was beyond that which would be contemplated by the ordinary user, such as Plaintiff, with the ordinary knowledge common to the public as to the drug's characteristics.

144.     The unreasonably dangerous characteristics of Mounjaro was beyond that which would be contemplated by Plaintiff's prescribing physician(s), with the ordinary knowledge common to prescribing physician as to the drug's characteristics.

145.     Plaintiff reasonably relied on Defendants' implied warranty of merchantability relating to Mounjaro's safety and efficacy.

146.     Plaintiff reasonably relied upon the skill and judgment of Defendants as to

whether Mounjaro was of merchantable quality and safe and fit for its intended use.

147.    Upon information and belief Plaintiff's prescribing physician(s) relied on Defendants' implied warranty of merchantability and fitness for the ordinary use and purpose relating to Mounjaro.

148.    Upon information and belief Plaintiff's prescribing physician(s) reasonably relied upon the skill and judgment of Defendants as to whether Mounjaro was of merchantable quality and safe and fit for its intended use.

149.    Had Defendants not made these implied warranties, Plaintiff would not have used Mounjaro and, upon information and belief, Plaintiff's prescribing physician(s) would not have prescribed Mounjaro and/or would have altered their prescribing practices and/or would have provided Plaintiff with adequate warnings regarding the dangers of Mounjaro to allow Plaintiff to make an informed decision regarding Plaintiff's use of Mounjaro.

150.    Defendants herein breached the aforesaid implied warranty of merchantability because the drug Mounjaro was not fit for its intended purposes.

151.    Defendants' breaches of implied warranty of merchantability were a substantial factor in causing Plaintiff's injuries.

152.    As a result of the foregoing breaches, Plaintiff was caused to suffer serious and dangerous injuries, including gastric symptoms described above and gastroparesis, causing, among other things, physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

153.    As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses.

154.     Pleading further and subject to the foregoing and without waiving same, Plaintiff would show that Defendants owed Plaintiff's prescribing physician(s) and/or Plaintiff a duty to adequately warn of the extent and the nature of the risks posed by their medications. Plaintiff would further show that because Defendants improperly withheld and/or concealed and/or hid information regarding the extent and the nature of the risks posed by their medications from Plaintiff's prescribing physician(s) and/or Plaintiff, Plaintiff was unable to learn about the cause of Plaintiff's injuries until after July 2024, when Plaintiff learned that Mounjaro may cause gastroparesis and its sequelae like reoccurring vomiting that go beyond the warnings contemplated by Mounjaro's label. Accordingly, Defendants fraudulently concealed the existence of Plaintiff's claims.

**COUNT FOUR - FRAUDULENT CONCEALMENT**

155.     Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

156.     At all relevant times, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Mounjaro, which was used by Plaintiff as hereinabove described.

157.     At all relevant times, Defendants knew or should have known that Mounjaro had not been adequately and/or sufficiently tested for safety.

158.     At all relevant times, Defendants knew or should have known that Mounjaro was unreasonably dangerous because of the increased risk of gastroparesis and its sequelae like reoccurring vomiting and delayed emptying lasting a year that go beyond the warnings contemplated by Mounjaro's label, especially when the drug was used in the form and manner as

provided by Defendant.

159.    Defendants had a duty to disclose material information about Mounjaro to Plaintiff and Plaintiff's prescribing physician(s), namely that Mounjaro is causally associated with increased risk of gastroparesis and its sequelae like reoccurring vomiting and delayed emptying lasting a year that go beyond the warnings contemplated by Mounjaro's label, because Defendants have superior knowledge of the drug and its dangerous side effects, this material information is not

readily available to Plaintiff or Plaintiff's prescribing physician(s) by reasonable inquiry, and Defendants knew or should have known that Plaintiff and Plaintiff's prescribing physician would act on the basis of mistaken knowledge.

160.    Nonetheless, Defendants consciously and deliberately withheld and concealed from Plaintiff's prescribing physician(s), Plaintiff, the medical and healthcare community, and the general public this material information.

161.    The Mounjaro labels lists nausea, vomiting, diarrhea, abdominal pain, and constipation as common adverse reactions reported in Mounjaro patients but with no indication as to severity, and it does not mention gastroparesis as a risk of taking Mounjaro, nor do they disclose gastroparesis as a chronic condition that can result as a consequence of taking Mounjaro.

162.    Defendants' promotional website for Mounjaro similarly does not disclose that Mounjaro is causally associated with increased risk of gastroparesis.

163.    Defendants' omissions and concealment of material facts were made purposefully, willfully, wantonly, and/or recklessly in order to mislead and induce medical and healthcare providers, such as Plaintiff's prescribing physician(s), and Plaintiff, to dispense, provide, prescribe, accept, purchase, and/or consume Mounjaro to promote weight loss.

164.    Defendants knew or should have known that Plaintiff's prescribing physician(s) would prescribe, and Plaintiff would use Mounjaro without the awareness of the risks of serious side effects, including gastric symptoms described above and gastroparesis and its sequelae like reoccurring vomiting that go beyond the warnings contemplated by Mounjaro's label.

165.    Defendants knew that Plaintiff and Plaintiff's prescribing physicians (s) had no way to determine the truth behind Defendants' misrepresentations and concealments surrounding Mounjaro, as set forth herein.

166.     Upon information and belief, Plaintiff's prescribing physician(s) justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to dispense, provide, and prescribe Mounjaro.

167.     Upon information and belief, had Plaintiff's prescribing physician(s) been warned of the increased risk of gastroparesis causally associated with Mounjaro, they would not have prescribed Mounjaro and/or would have provided Plaintiff with adequate information regarding the increased risk of gastroparesis causally associated with Mounjaro to allow Plaintiff to make an informed decision regarding Plaintiff's use of Mounjaro.

168.     Upon information and belief, had Plaintiff's prescribing physician(s) been told that Mounjaro had not been sufficiently and/or adequately tested for safety risks, including gastric symptoms described above and gastroparesis and its sequelae like reoccurring vomiting that go beyond the warnings contemplated by Mounjaro's label, they would not have prescribed Mounjaro and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Mounjaro to allow Plaintiff to make an informed decision regarding Plaintiff's use of Mounjaro.

169.     Plaintiff justifiably relied on Defendant' material misrepresentations, including the omissions contained therein, when making the decision to purchase and/or consume Mounjaro.

170.     Had Plaintiff been informed of the increased risks causally associated with Mounjaro, Plaintiff would not have used Mounjaro and/or suffered reoccurring vomiting that goes beyond the warnings contemplated by Mounjaro's label.

171.     Defendants' fraudulent concealments were a substantial factor in causing Plaintiff's injuries.

172.     As a direct and proximate result of the above stated omissions as described herein, Plaintiff was caused to suffer serious and dangerous injuries, including gastric symptoms described above and gastroparesis, causing, among other things, physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of

developing any of the above-named health consequences.

173.    As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses.

174.    Pleading further and subject to the foregoing and without waiving same, Plaintiff would show that Defendants owed Plaintiff's prescribing physician(s) and/or Plaintiff a duty to adequately warn of the extent and the nature of the risks posed by their medications. Plaintiff would further show that because Defendants improperly withheld and/or concealed and/or hid information regarding the extent and the nature of the risks posed by their medications from Plaintiff's prescribing physician(s) and/or Plaintiff, Plaintiff was unable to learn about the cause of Plaintiff's injuries until after July 2024, when Plaintiff learned that Mounjaro may cause gastroparesis and its sequelae like reoccurring vomiting that go beyond the warnings contemplated by Mounjaro's label. Accordingly, Defendants fraudulently concealed the existence of Plaintiff's claims.

## COUNT FIVE - FRAUDULENT MISREPRESENTATION

175.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

176.    At all relevant times, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Mounjaro, which was used by Plaintiff as hereinabove described.

177.    At all relevant times, Defendants knew or should have known that Mounjaro had not been adequately and/or sufficiently tested for safety.

178.    At all relevant times, Defendants knew or should have known of the serious side effects of Mounjaro, including gastric symptoms described above and gastroparesis and its sequelae like reoccurring vomiting and delayed emptying lasting a year that go beyond the warnings contemplated by Mounjaro's label.

179.    At all relevant times, Defendants knew or should have known that Mounjaro was not safe to improve glycemic control in adults with type 2 diabetes, reduce cardiovascular risk in patients with type 2 diabetes, or promote weight loss, given its increased risk of gastroparesis.

180.    Nonetheless, Defendants made material misrepresentations to Plaintiff, Plaintiff's prescribing physician(s), the medical and healthcare community at large, and the general public regarding the safety and/or efficacy of Mounjaro.

181.    Defendants represented affirmatively and by omission on television advertisements and on the label of Mounjaro that Mounjaro was a safe and effective drug for treatment obesity, despite being aware of increased risks of gastroparesis and its sequelae like reoccurring vomiting that go beyond the warnings contemplated by Mounjaro's label causally associated with using Mounjaro.

182.    Defendants was aware or should have been aware that its representations were false or misleading and knew that they were concealing and/or omitting material information from Plaintiff, Plaintiff's prescribing physician(s), the medical and healthcare community, and the general public.

183.    Defendants' misrepresentations of material facts were made purposefully, knowingly, willfully, wantonly, recklessly, and/or without regard to its truth, in order to mislead and induce medical and healthcare providers, such as Plaintiff's prescribing physician(s), and Plaintiff, to dispense, provide, prescribe, accept, purchase, and/or consume Mounjaro to promote weight loss.

184.    Upon information and belief Plaintiff's prescribing physician(s) had no way to determine the truth behind Defendants' false and/or misleading statements, concealments and omissions surrounding Mounjaro, and reasonably relied on false and/or misleading facts and information disseminated by Defendant, which included Defendants' omissions of material facts in which Plaintiff's prescribing physician(s) had no way to know were omitted.

185.    Upon information and belief Plaintiff's prescribing physician(s) justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to prescribe Mounjaro to Plaintiff.

186.    Upon information and belief, had Plaintiff's prescribing physician(s) been informed of the increased risk of gastroparesis causally associated with Mounjaro, Plaintiff's prescribing physician(s) would not have prescribed Mounjaro and/or would have provided Plaintiff with adequate information regarding safety of Mounjaro to allow Plaintiff to make an informed decision regarding Plaintiff's use of Mounjaro.

187.    Upon information and belief, had Plaintiff's prescribing physician(s) been told that Mounjaro had not been sufficiently and/or adequately tested for safety risks, including gastric symptoms described above and gastroparesis and its sequelae like reoccurring vomiting that go beyond the warnings contemplated by Mounjaro's label, they would not have prescribed Mounjaro and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Mounjaro so that Plaintiff can make an informed decision regarding Plaintiff's use of Mounjaro.

188.    Plaintiff had no way to determine the truth behind Defendants' false and/or misleading statements, concealments and omissions surrounding Mounjaro, and reasonably relied on false and/or misleading facts and information disseminated by Defendant, which included Defendants' omissions of material facts in which Plaintiff had no way to know were omitted.

189.    Plaintiff justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to accept, purchase and/or consume Mounjaro.

190.    Had Plaintiff been told of the increased risk of gastroparesis and its sequelae like reoccurring vomiting that go beyond the warnings contemplated by Mounjaro's label causally associated with Mounjaro, Plaintiff would not have used Mounjaro and/or suffered reoccurring vomiting that goes beyond the warnings contemplated by Mounjaro's label.

191.    Had Plaintiff been told of the lack of sufficient and/or appropriate testing of Mounjaro for safety risks, including gastric symptoms described above and gastroparesis and its sequelae like reoccurring vomiting that go beyond the warnings contemplated by Mounjaro's label, Plaintiff would not have used Mounjaro and/or suffered reoccurring vomiting that goes beyond the warnings contemplated

by Mounjaro's label.

192.     As a direct and proximate result of the above stated false representations and/or omissions as described herein, Plaintiff was caused to suffer serious and dangerous injuries, including gastric symptoms described above and gastroparesis, causing, among other things, physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

193.     As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses.

194.     Pleading further and subject to the foregoing and without waiving same, Plaintiff would show that Defendants owed Plaintiff's prescribing physician(s) and/or Plaintiff a duty to adequately warn of the extent and the nature of the risks posed by their medications. Plaintiff would further show that because Defendants improperly withheld and/or concealed and/or hid information regarding the extent and the nature of the risks posed by their medications from Plaintiff's prescribing physician(s) and/or Plaintiff, Plaintiff was unable to learn about the cause of Plaintiff's injuries until after July 2024, when Plaintiff learned that Mounjaro may cause gastroparesis and its sequelae like reoccurring vomiting that go beyond the warnings contemplated by Mounjaro's label. Accordingly, Defendants fraudulently concealed the existence of Plaintiff's claims.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants on each of the above- referenced claims and Causes of Action and as follows:

a)     Compensatory damages to Plaintiff of $5,000,000.00 for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by Plaintiff, health care costs, medical monitoring, together with interest and costs as provided by law;

b)     Punitive and/or exemplary damages to Plaintiff of $5,000,000.00 for the wanton, willful, fraudulent, reckless acts of Defendant, who demonstrated a complete disregard and reckless

indifference for the safety and welfare of the general public and to Plaintiff in an amount sufficient to punish Defendants and deter future similar conduct;

        c)      Medical monitoring to diagnose GLP-1 RA induced injuries at an earlier date to allow for timely treatment and prevention of exacerbation of injuries;

        d)      Awarding Plaintiff the costs of these proceedings; and

        e)      Such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury as to all issues.

Dated: July 8, 2025

                                             RESPECTFULLY SUBMITTED,

                                           CHARLOTTE MANNING

                                           By: */s/Daniel J. Martin*
                                           Daniel J. Martin, Esquire
                                           Fishwick & Associates PLC
                                           30 Franklin Road SW, Suite 700
                                           Roanoke, Virginia 24011
                                           (540) 345-5890 Telephone
                                           (540) 345-5789 Facsimile
                                           Daniel.Martin@fishwickandassociates.com
                                           *Attorney for Plaintiff*

John P. Fishwick, Jr., Esquire (VSB #23285)
Carrol M. Ching, Esquire (VSB # 68031)
Daniel J. Martin, Esquire (VSB #92387)
Zoë E. Dye, Esquire (VSB #99505)
Fishwick & Associates PLC
30 Franklin Road SW, Suite 700
Roanoke, Virginia 24011
(540) 345-5890 Telephone
(540) 345-5789 Facsimile
John.Fishwick@fishwickandassociates.com
Carrol.Ching@fishwickandassociates.com
Daniel.Martin@fishwickandassociates.com
Zoe.Dye@fishwickandassociates.com
*Attorneys for Plaintiff*

JS 44   (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Charlotte Manning

**DEFENDANTS**

Eli Lilly and Company; Lilly USA, LLC

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Marion County, Indiana
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Fishwick & Associates PLC; 30 Franklin Road SW, Suite
700 Roanoke, Virginia 24011; (540) 345-5890

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government
Plaintiff
- [ ] 2 U.S. Government
Defendant
- [ ] 3 Federal Question
*(U.S. Government Not a Party)*
- [x] 4 Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [x] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC §1332

Brief description of cause:
Inadequate warning, breach of warranties, fraudulent concealment, etc., arising from Defendants' pharmaceutical product

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
$10,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE   Honorable Karen Spencer Marston   DOCKET NUMBER   MDL No. 3094

DATE
07/08/2025

SIGNATURE OF ATTORNEY OF RECORD
/s/Daniel J. Martin

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE